**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| JOSEPH NICOS SNYDER, individually and on behalf of all others similarly situated, | ) | |
| Plaintiff(s), | ) | **CIVIL ACTION NO.: 1:25-cv-26172** |
| v. | ) | **CLASS ACTION** |
| CREDIT ONE BANK, N.A., | ) | **JURY TRIAL DEMANDED** |
| Defendant(s). | ) | |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, JOSEPH NICOS SNYDER ("Plaintiff"),on behalf of himself and other similarly situated individuals, sues Defendant, CREDIT ONE BANK, N.A. ("Defendant") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") and the regulations promulgated thereunder. Plaintiff alleges as follows:

**INTRODUCTION**

1. This case concerns numerous automated telephonic sales calls the Defendant made to Plaintiff promoting its banking services in violation of the TCPA.

2. The Defendant's automated equipment continued to make these calls even after Plaintiff requested that Defendant stop making further calls.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, intrusion upon seclusion, harassment, aggravation, and disruption of the daily life of many individuals. Plaintiff also seeks statutory damages on behalf of himself and members of the Class, and any other available legal or equitable remedies.

4. Because telemarketing campaigns run by automated equipment are generally

programmed to make thousands of calls and/or text messages to potential customers *en masse*, Plaintiff brings this action on behalf of a proposed class of persons who also received Defendant's calls and/or text messages after making a stop request.

5. Plaintiff also brings this action on behalf of a proposed class of persons who received Defendant's calls and/or text messages despite being on the federal do-no-call registry.

6. Lastly, Plaintiff brings this action on behalf of a proposed class of persons who received Defendant's calls and/or text messages even though they never gave express written consent.

7. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

8. Jurisdiction is proper under 28 U.S.C. §1331 as Plaintiff alleges violations of federal statute, 47 U.S.C. §227 *et seq*.

9. Jurisdiction is also proper under 28 U.S.C. §1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (One Thousand Five Hundred) Dollars in damages for each call or text message sent in violation of the TCPA, which when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

10. This Court has personal jurisdiction over Plaintiff, because Plaintiff submits to the Court's jurisdiction.

11. This Court has personal jurisdiction over Defendant, pursuant to Florida Statutes §48.193(1)(a)(1), (2), (3), and (6); because, Defendant is carrying on and conducting substantial business activity in the State of Florida; Defendant committed a tortious act within the State of Florida; and/or Defendant caused injury to persons in the State of Florida arising out of an act(s) or omission(s) outside this state and at or about the time of such injuries Defendant was engaged in solicitation or service activities within this state.

12. Venue is proper in the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. §1391(a), because a substantial part of the events or omissions giving rise to these claims occurred in this District, including the transmission and/or receipt of the subject unauthorized telephone sales calls; and the Defendant has caused harm to Plaintiff and the Class Members residing in this District.

## PARTIES

13. Plaintiff is a natural person and a resident Miami-Dade County, Florida.

14. Defendant is a national banking association with its headquarters located at 16801 S. Cimarron Rd., Las Vegas, NV 89113.

15. Defendant, directly or through other persons, entities, or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, and/or otherwise caused all of the wrongful acts and omissions, including the unsolicited sales calls and/or text messages that are the subject matter of this Complaint.

## THE TCPA

16. The TCPA was implemented to prevent calls and messages like the ones described herein, and to protect the privacy of citizens like Plaintiff. The Federal Communications commission (FCC) reports that unwanted calls constitute their top consumer complaint. Federal

Communications Commission, *Stop Unwanted Calls and Texts* (Mar. 2, 2021), https://www.fcc.gov/consumers/guides/stop-unwanted-calls-and-texts (last visited Apr. 16, 2021). In the fiscal year 2020, the Federal Trade Commission (FTC) received 293,071 complaints from Florida consumers about unwanted telephone calls. Federal Trade Commission, *Do Not Call Data Book 2020* (Oct. 2020), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year2020/dnc_data_book_2020.pdf (last visited Apr. 16, 2021).

17. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. *See* 47 U.S.C. § 227(b)(1)(A).

18. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

19. Defendant made telephone sales calls to Plaintiff and the Class using an ATDS.

20. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

21. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

22. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express ***written*** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis added).

23. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "clear and conspicuous disclosure of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012) (internal quotations omitted).

24. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

25. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context'." *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).

26. "Telemarketing occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788

F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

27. TCPA regulations promulgated by the FFC define "telemarketing" as "the initiation of a telephone call or messages for the purposes of encouraging the purchase or rental of, or investment in, property, goods, or services" 47 C.F.R. § 64.1200(f)(12)

28. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

29. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

30. Additionally, the TCPA prohibits telemarketing solicitation to a subscriber who has "registered his or her telephone number on the national Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 C.F.R. § 64.1200(c)(2).

31. Further, District Courts and the FCC have "repeatedly acknowledged the existence of vicarious liability under the TCPA." *See* Gomez v. Campbell-Ewald Co., 768 F.3d 871,878 (9th Cir. 2014) (citing *In re* Joint Petition Filed by Dish Network, LCC, 28 FCC. Rcd. 6574, 6574 (2013)). Principles of apparent authority and ratification may also provide a basis for vicarious seller liability for violations of section 227(b). *See Thomas v. Taco Bell Corp.*, 582 F. App'x

678(9th Cir. 2014) (citing 28 F.C.C. Rcd. at 6590 n. 124). A ratification occurs when the benefits of the purportedly unauthorized acts are accepted with full knowledge of the facts under circumstances demonstrating the intent to adopt the unauthorized arrangement. *Stalley v. Transitional Hosps. Corp. of Tampa, Inc.*, 44 So. 3d 627, 631 (Fla. 2d DCA 2010).

## **FACTUAL ALLEGATIONS**

32. At all times relevant to this action, Plaintiff's cellular telephone number, ending in 8404, has been on the National Do Not Call Registry. *See* **Exhibit "1"**

33. Plaintiff is a residential subscriber and his cellular telephone number, ending in 8404, is a residential telephone number.

34. The TCPA provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c).

35. Since at least April 26, 2025, through May 30, 2025, Defendant made several unsolicited telemarketing phone calls to Plaintiff's residential telephone number, ending in 8404.

36. At no time did Plaintiff consent to receiving unsolicited telephone sales calls from Defendant.

37. Defendant sent these telephone solicitations despite Plaintiff already being on the National Do Not Call Registry.

38. Defendant sent further telephone solicitations to Plaintiff despite Plaintiff informing Defendant that he did not wish to receive such solicitation calls.

39. Defendant sent these telephone solicitations to Plaintiff despite not instituting the required procedures for maintaining a list of persons that do not wish to receive such solicitations.

40. Screenshots of some of Defendant's telephone sales calls to Plaintiff are provided below for demonstrative purposes:










41. The purpose of Defendant's telephone calls was to solicit the sale of its consumer credit or banking services.

42. Upon information and belief, Defendant caused similar telephonic sales calls and/or text messages to be delivered to members of the putative Class.

43. To transmit the above telephonic sales calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and Class member's telephone numbers. Plaintiff is informed and believes this is the case because of the pre-recorded message that accompanies the calls.

44. Defendant is or should have been aware that it is placing unsolicited telephonic sales calls using an automated system for the selection and dialing of phone numbers to Plaintiff and Class members without their prior express written consent.

45. Defendant is or should have been aware that it is placing unsolicited telephonic

sales calls using an automated system for the selection and dialing of phone numbers to Plaintiff and Class members that were on the National Do Not Call Registry.

46. Defendant is or should have been aware that it is placing unsolicited telephonic sales calls using an automated system for the selection and dialing of phone numbers to Plaintiff and Class members that informed Defendant they do not consent to receiving Defendant's telephonic sales calls.

47. Plaintiff was damaged by Defendant's telephonic sales calls. In addition to using Plaintiff's cellular data, his privacy was wrongfully invaded and his right to seclusion was infringed upon, thereby causing Plaintiff aggravation and annoyance having to deal with repeated, unwanted telephonic sales calls.

48. Plaintiff received at least one of Defendant's unsolicited telephonic sales calls while he was spending time having lunch with a close family member.

49. Apart from causing Plaintiff to spend time investigating the source of the telephonic sales calls and investing time researching and hiring counsel, Plaintiff also received at least one of the unsolicited telephonic sales calls while he was at work. This caused Plaintiff to stop performing his work, check his phone, waste time silencing the calls, and attempt to stop them; causing specific injury, trespass, intrusion and disruption onto Plaintiff's personal life and employment.

## CLASS ALLEGATIONS

50. Plaintiff brings this class action under Rule 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and of a similarly situated "Class" or "Class Members" defined as:

> **No Consent Class: All persons in the United States who, within the four years prior to the filing of this Complaint, (1) received a telephone sales call or text message from Defendant or anyone on Defendant's**

> **behalf, (2) regarding Defendant's products and/or services (3) to said person's residential telephone number (4) without receiving express written consent.**
>
> **Internal DNC Class: All persons in the United States who, within the four years prior to the filing of this Complaint, (1) received a telephone sales call or text message from Defendant or anyone on Defendant's behalf, (2) regarding Defendant's products and/or services (3) to said person's residential telephone number, (4) after making a request to Defendant to not receive future sales calls at least 31 days prior to receiving the first sales call from Defendant.**
>
> **TCPA DNC Class: All persons in the United States who, within the four years prior to the filing of this Complaint, (1) received a telephone sales call or text message from Defendant or anyone on Defendant's behalf, (2) regarding Defendant's products and/or services (3) to said person's residential telephone number, 4) such person had previously included their number on the National Do Not Call Registry at least 31 days prior to receiving the first sales call from Defendant.**

51. Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendant, and the directors, officers and employees of that Defendant or its subsidiaries or affiliates, and the Judge assigned to the case and any of his/her family members. Plaintiff does not know the number of members in the Class but believes the Class members number in the tens of thousands, if not more.

52. This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend, expand, or narrow the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

**Numerosity**

53. At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of a standardized telephone sales campaign, Plaintiff believes, at a minimum, there are greater than ten thousand (10,000) Class Members. Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the likelihood of inconsistent or varying adjudications of individual actions that would establish incompatible standards of conduct for the Defendant.

54. Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's call logs, phone records, and marketing records.

55. Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

**Existence and Predominance of Common Questions of Fact and Law**

56. There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

a. Whether Defendant or its agents initiated unsolicited telephonic sales calls to Plaintiff and Class members;

b. Whether Defendant made non-emergency calls to Plaintiff's and the Class members cellular telephones using an ATDS;

c. Whether Defendant can meet its burden of showing that it had prior express written consent to make such telephone sales calls;

d. Whether Defendant maintains an internal do-not-call list and trains its employees regarding how to use the list;

e. Whether Defendant conduct was knowing and willful;

f. Whether Defendant is liable for damages, and the amount of such damages; and

g. Whether Defendant should be enjoined from such conduct in the future.

57. One or more questions or issues of law and/or fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Federal Rule of Civil Procedure 23(b)(3).

**Typicality**

58. Plaintiff's claims are typical of the claims of the members of the Class.

59. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

60. Plaintiff and members of the Class each received at least one telephonic sales call and/or text message, advertising Defendant's services without prior express written consent, which Defendant sent or caused to be sent to Plaintiff and the members of the Class.

61. Plaintiff and members of the Class each received at least one telephonic sales call and/or text message, advertising Defendant's services while Plaintiff and members of the Class were on the National Do-Not-Call Registry, which Defendant sent or caused to be sent to Plaintiff

and the members of the Class.

62. Plaintiff and members of the Class each received at least one telephonic sales call and/or text message, advertising Defendant's services which Defendant sent or caused to be sent to Plaintiff and the members of the Class that stated that they did not consent to receive such calls or text messages.

**Protecting the Interests of the Class Members**

63. Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel, who are competent and experienced in litigation in TCPA and class action litigation.

**Superiority**

64. A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this

matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

65. Moreover, class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole. Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted sales calls.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE TCPA 47 U.S.C. §227(b)
### (On Behalf of Plaintiff and the No Consent Class)

66. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

67. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system…to any telephone number assigned to a…cellular telephone service…" 47 U.S.C. § 227(b)(1)(A)(iii).

68. Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class, Defendant knew that it did

not have prior express consent to make these calls thus the violations were willful or knowing.

69. These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

70. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

71. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that it was using equipment that constituted an automatic telephone dialing system.

72. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount in statutory damages for each willful violation recoverable by members of the Class.

**WHEREFORE**, Plaintiff respectfully requests the Court grant Plaintiff and Class members relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT II**
**VIOLATIONS OF THE TCPA 47 U.S.C. §227(c) and 47 C.F.R. §64.1200(d)**
**(On Behalf of Plaintiff and the Internal DNC Class)**

73. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

74. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> "No person or entity shall initiate any artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> > (1) Written policy. Persons or entities making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
> >
> > (2) Training of personnel. Personnel engaged in making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or who are engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
> >
> > (3) Recording, disclosure of do-not-call requests. If a person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed 30 days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a call is made or an affiliated entity."

75. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

76. Plaintiff and the Internal DNC Class members made requests to Defendant not to

receive calls and/or text messages from Defendant.

77. Defendant failed to honor Plaintiff and the Internal DNC Class members opt-out requests.

78. Defendant's refusal to honor opt-out requests is in part because of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

79. Thus, Defendant has violated 47 C.F.R. § 64.1200(d).

80. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

81. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

**WHEREFORE**, Plaintiff respectfully requests the Court grant Plaintiff and Class members relief against Defendant, as set forth in the Prayer for Relief below.

**COUNT III**
**VIOLATIONS OF THE TCPA 47 U.S.C. §227(c) and 47 C.F.R. §64.1200(d)**
**(On Behalf of Plaintiff and the TCPA DNC Class)**

82. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

83. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

84. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

85. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

86. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

87. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the TCPA DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

88. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the TCPA DNC Class received a sales call made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the TCPA DNC Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

89. To the extent Defendant's misconduct is determined to be willful and knowing, the

Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the TCPA DNC Class.

**WHEREFORE**, Plaintiff respectfully requests the Court grant Plaintiff and Class members relief against Defendant, as set forth in the Prayer for Relief below.

## COUNT IV
## INJUNCTIVE RELIEF

90. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

91. In violation of the TCPA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

92. Defendant made and/or knowingly allowed the telephonic sales calls and/or text messages to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers, in direct violation of the TCPA.

93. Defendants violated, and continue to violate, the TCPA by making unsolicited telephonic sales calls using an ATDS to Plaintiff and the Class's residential cellular telephones without prior express written consent.

94. As a direct result of Defendant's unlawful practices, Plaintiff and the Class have been irreparably harmed.

95. Plaintiff and the Class have the right to be free from ongoing intrusions into their privacy, right of seclusion, personal life, family life, and professional career.

96. Defendant's unlawful telephone sales calls caused Plaintiff a specific injury, invasion of privacy, and intrusion upon Plaintiff's right to seclusion.

97. As set out above, absent injunctive relief, there is a clear risk that Defendant's

actions will recur, and Plaintiff and the Class will be subject to illegal telephonic sales calls and/or text messages in the future.

98. Plaintiff and the Class seek to be free from further illegal telephonic sales calls made by Defendant.

99. Legal damages will not adequately redress the injuries suffered by Plaintiff and the Class as a result of Defendant's continuing violations of the law.

100. The public interest will be served if Defendant is enjoined from making further telephonic sales calls without receiving express written consent from the called party.

**WHEREFORE**, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court enter judgment in his favor and in favor of the class, against Defendant for:

a. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and his counsel as Class counsel;

b. Statutory damages of $500 per call;

c. Willful damages at $1,500 per call;

d. A declaration that Defendant's practices described herein violate the TCPA;

e. An injunction prohibiting Defendant from using an automated system for the selection and dialing of telephone numbers to call numbers assigned to cellular telephones without the prior express written consent of the called party;

f. An injunction prohibiting Defendant from using an automated system for

the selection and dialing of telephone numbers to call numbers assigned to cellular telephones on the DNC list;

g. Reasonable attorney's fees and costs; and

h. Such further and other relief as this Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

**Dated:** **December 31, 2025**.

Respectfully submitted,

**THE G LAW GROUP, P.A.**
*Attorneys for the Plaintiff*
1501 Biscayne Blvd., Suite 501
Miami, FL 33132
Tel: (305) 709-8877
Fax: (786) 460-8333
sgenadiev@theglawgroup.com

By: */s/ Simeon Genadiev*
**SIMEON GENADIEV, ESQ.**
Florida Bar No.: 100918